COURT OF APPEALS
DECISION
DATED AND FILED

April 14, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP1114**

Cir. Ct. No. 2023CV706

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

MICHAEL J. BALSKUS,

PLAINTIFF-APPELLANT,

V.

WANEZEK, JAEKELS, DAUL & BABCOCK, SC,

DEFENDANT-RESPONDENT,

JANE DOE AND ABC INSURANCE,

DEFENDANTS.

APPEAL from an order of the circuit court for Brown County: D. TODD EHLERS, Judge. *Affirmed*.

Before Stark, P.J., Hruz, and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Michael J. Balskus, pro se,[1] appeals an order dismissing his claims against Wanezek, Jaekels, Daul & Babcock, SC ("the Wanezek Firm"). The circuit court concluded that Balskus's claims are barred by the doctrine of issue preclusion. We agree and, accordingly, affirm.

## BACKGROUND

¶2 This appeal arises out of a lawsuit filed by Balskus against the Wanezek Firm and one of its attorneys, Gregory Babcock. According to Balskus's complaint, Balskus's ex-wife, Mary Ellen Balskus, retained Attorney Babcock to represent her in postdivorce litigation between Mary Ellen and Balskus ("the family law case").[2] On or about June 30, 2020, Attorney Babcock filed a "Notice of Motion and Motion for Contempt of Court and for Further Relief" on Mary Ellen's behalf. Prior to an August 21, 2020 hearing on that motion, Attorney Babcock filed an exhibit that consisted of "bi-weekly records of paycheck stubs on the account of Michael J. Balskus for his employment as an Assistant District Attorney for Winnebago County for the time period of 10/14/2018 through 10/12/2019."

¶3 After questioning how Attorney Babcock had obtained those records, Balskus learned that on June 8, 2020, Attorney Babcock had served on the "State of Wisconsin Department of Administration—State Prosecutors" a subpoena duces tecum demanding the production of:

---

[1] Balskus is a licensed Wisconsin attorney.

[2] To avoid confusion, we refer to Mary Ellen Balskus as "Mary Ellen" throughout the remainder of this opinion.

1. All payroll records for Michael J. Balskus from January 1, 2018 to present, including gross income, deductions and net income from each payroll check. Payroll records including but are not limited to wages, vacation/sabbatical pay, sick leave accrual, etc.

2. All employment records for Michael J. Balskus from his application for employment with Winnebago District Attorney, through today's date.

3. A copy of any retirement plan sponsored by Winnebago District Attorney in which Michael J. Balskus has any interest.

According to Balskus's complaint in the instant case, a representative of the Department of Administration "complied with the subpoena believing that it was properly issued." The complaint further alleged that, at the time the subpoena was issued, Attorney Babcock "had not filed any motion to hold [Balskus] in contempt" and "had not scheduled any depositions on the matter."

¶4    Balskus's complaint alleged that the subpoena issued by Attorney Babcock in the family law case "intentionally requested information that violated [Balskus's] privacy interests" and that Attorney Babcock intentionally "failed to follow the requirements of [WIS. STAT. §] 805.07(2)(b) [(2023-24)[3]] by failing to give [Balskus] notice that [Balskus] could preserve his right to object to the documents that were requested." The complaint further asserted that Attorney Babcock's "conduct was extreme and outrageous by purposely ignoring the requirements of [§] 805.07(2)(b) and by his subsequent conduct" in failing to reveal where he had obtained the records in question. The complaint also asserted that Attorney Babcock's conduct "caused severe and permanent emotional, psychological and economic injuries to" Balskus; that because of Attorney

---

[3] All references to the Wisconsin Statutes are to the 2023-24 version.

3

Babcock's "abuse of process," Balskus "has suffered damage, including emotional distress from the harassment … related to the illegal use and abuse of his subpoena powers"; and that Attorney Babcock's conduct "simulated legal process by directing the State to produce confidential records in order to get an advantage over [Balskus] and to induce a payment for a claim made by [Mary Ellen]." The complaint sought both compensatory and punitive damages.

¶5    Attorney Babcock and the Wanezek Firm filed a motion to dismiss Balskus's claims, as well as a motion for summary judgment. The motion to dismiss asserted that Balskus's claims were barred by the doctrines of attorney immunity and issue preclusion and that the complaint failed to state a claim for abuse of process. The motion for summary judgment argued that the circuit court lacked personal jurisdiction over Attorney Babcock and the Wanezek Firm because they were not properly served. The court agreed that Attorney Babcock was not properly served and, as a result, granted partial summary judgment and dismissed him from the case.

¶6    With respect to issue preclusion, the Wanezek Firm argued that Balskus's current claims regarding the improper issuance of the subpoena had already been raised and rejected in the family law case. In support of that argument, the Wanezek Firm submitted a "Motion to Dismiss Respondent's Motion for Contempt and For Other Sanctions" that Balskus had filed in the family law case on January 22, 2021, in which Balskus sought to dismiss Mary Ellen's contempt motion and also sought "sanctions including costs" based on the allegedly improper issuance of the subpoena.

¶7    The Wanezek Firm also submitted a "Decision and Order Amending Judgment" that was issued by a court commissioner in the family law case on

March 15, 2021. Among other things, that order denied Balskus's "Motion to Dismiss Respondent's Motion for Contempt and For Other Sanctions." The court commissioner explained that Attorney Babcock "acknowledges that he did not send a copy [of the subpoena] to [Balskus] and should have," but that Attorney Babcock "indicates that this was an unintentional oversight." The court commissioner further reasoned that "[t]he information requested within the subpoena, particularly the pay stubs, would likely have been deemed discoverable and any objection by [Balskus] to its release would likely have been denied." The court commissioner also rejected Balskus's argument that there were no motions pending before the court at the time the subpoena was issued.

¶8    Mary Ellen sought de novo review of other aspects of the court commissioner's March 15, 2021 order. In further support of its motion to dismiss in the instant case, the Wanezek Firm submitted a transcript of the de novo hearing, during which the circuit court in the family law case stated the following with respect to Balskus's arguments regarding the subpoena:

> [T]he statutes are there for a reason and I'm not sitting here as a judge stating that we should ignore statutes, but it's just not the type of violation, if there is a violation, if there was a violation, that—I mean, it's an oversight and I can't—I have no evidence that Mr. Babcock was playing any sort of gamesmanship or anything else. If it did happen, it was an oversight and it's been remedied, and I'm not about to find anybody in contempt or dismiss the case or anything like that based on that type of conduct.

¶9    Balskus filed a brief in opposition to the Wanezek Firm's motion to dismiss and, like the Wanezek Firm, submitted multiple documents to the circuit court in support of his position. Among those documents was the circuit court's written decision in the family law case on Mary Ellen's motion for de novo review of the court commissioner's decision. In that decision, the court acknowledged

Balskus's argument "that his Motion to Dismiss should have been granted," but the court questioned whether that issue was properly before it, given that Balskus did not seek de novo review of the court commissioner's decision on that issue. Regardless, the court stated that it agreed with the court commissioner's reasoning and "incorporate[d] it by reference." The court explained:

> Attorney Babcock admitted that he mistakenly did not send a copy of the subpoena to [Balskus]. He should have done so. Nevertheless, dismissal of the action would be a drastic remedy for such a failure to follow the statute. This is especially true when the information was likely discoverable and the subpoena likely would have been granted even had [Balskus] had notice of it and sought a protective order.

¶10 The circuit court in the family law case specifically rejected Balskus's argument that Attorney Babcock had improperly used the subpoena to obtain Balskus's performance evaluations. The court stated:

> Under Wisconsin's discovery statutes, Attorney Babcock was able to obtain discovery of any information which was relevant. It need not be admissible to be discoverable. [*See* WIS. STAT. §] 804.01(2)(a). The bar for relevancy under this statute is low. Given the language in the [marital settlement agreement] about [Balskus's] obligation to work and not retire until a certain age, information about how he was performing and what he told his employer meets the minimal standard of relevancy under the statute, even if this information might not be admissible at trial.

¶11 The circuit court in the family law case also rejected Balskus's argument that "an action was not pending" at the time the subpoena was issued. The court reasoned that "[t]he divorce case was pending, even if the motion for contempt had not yet been filed," and that Attorney Babcock "was allowed to issue a subpoena within the context of the divorce proceeding, regardless of when his motion was filed."

6

¶12 Based on the parties' submissions, the circuit court in the instant case granted the Wanezek Firm's motion to dismiss Balskus's claims on issue preclusion grounds. In its oral ruling, the court explained that the doctrine of issue preclusion

> forecloses re-litigation in the subsequent action of an issue of law or fact that has been actually litigated or decided in a prior action. Issue preclusion does not require identity of parties. Issue preclusion seeks to prevent re-litigation of issues actually determined in a prior lawsuit even if the cause of action in the second suit is different from the first.

¶13 The circuit court concluded that Balskus's current claims regarding the improper issuance of the subpoena had "already been litigated" in the family law case. The court further concluded that all five of the fundamental fairness factors set forth in Wisconsin case law "weigh in favor [o]f issue preclusion in this matter." Specifically, the court found that Balskus "did have an opportunity for review of" the court commissioner's decision, and Balskus did not appeal the circuit court's decision on de novo review; that "the facts and law at issue in the prior motion for contempt and present action are identical"; that there had been no intervening "shift in the law"; that Balskus "had the ability to conduct discovery [in the family law case] but elected not to do so"; that there had been "no change in the burden of persuasion"; and that "public policy is not implicated."

¶14 Balskus now appeals from the circuit court's order dismissing his claims against the Wanezek Firm.[4]

---

[4] On appeal, Balskus does not raise any argument that the circuit court erred by dismissing his claims against Attorney Babcock. Accordingly, we do not address that issue.

**DISCUSSION**

¶15     As explained above, the Wanezek Firm filed a motion to dismiss Balskus's claims on issue preclusion grounds.  In support of that motion, however, the Wanezek Firm submitted "matters outside of the pleadings" to the circuit court.  *See* WIS. STAT. § 802.06(2)(b).  Balskus did not object to the court considering those materials and, instead, submitted additional materials outside the pleadings for the court's consideration.  The court considered the documents submitted by both parties when ruling on the Wanezek Firm's motion to dismiss.  As such, the motion was converted to a motion for summary judgment and was "disposed of as provided in [WIS. STAT. §] 802.08."  *See* § 802.06(2)(b).

¶16     We independently review a grant of summary judgment, using the same methodology as the circuit court.  ***Hardy v. Hoefferle***, 2007 WI App 264, ¶6, 306 Wis. 2d 513, 743 N.W.2d 843.  Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  WIS. STAT. § 802.08(2).

¶17     Here, the circuit court granted the Wanezek Firm summary judgment based on the doctrine of issue preclusion.  "Issue preclusion refers to the effect of a judgment in foreclosing relitigation in a subsequent action of an issue of law or fact that has been actually litigated and decided in a prior action."  ***Northern States Power Co. v. Bugher***, 189 Wis. 2d 541, 550, 525 N.W.2d 723 (1995).  A court applies a two-step analysis when deciding whether to apply issue preclusion in a given case, considering: "(1) whether issue preclusion can, as a matter of law, be applied, and if so, (2) whether the application of issue preclusion would be

fundamentally fair." ***Estate of Rille v. Physicians Ins.***, 2007 WI 36, ¶36, 300 Wis. 2d 1, 728 N.W.2d 693.

¶18 Under the first step of the issue preclusion analysis, a court must determine "whether the issue or fact was actually litigated and determined in the prior proceeding by a valid judgment in a previous action and whether the determination was essential to the judgment." ***Id.***, ¶37. This determination is a question of law, which we review independently. ***Id.*** "Issue preclusion can be applied only if this first step is satisfied."[5] ***Id.***

¶19 Like the circuit court, we conclude, based upon the undisputed facts, that the first step of the issue preclusion analysis is satisfied in this case because the claims asserted in Balskus's complaint are based on issues that were previously litigated and determined in the family law case. Balskus's "Motion to Dismiss Respondent's Motion for Contempt and For Other Sanctions" in the family law case contained the following allegations: (1) Attorney Babcock issued a subpoena seeking pay stubs and other employment records from Balskus's former employer "when there was nothing pending in front of the Court"; (2) Attorney Babcock "intentionally disregarded the statute dealing with the issuance of a subpoena duces tecum" by failing to provide Balskus with notice of the subpoena; (3) Attorney Babcock "engag[ed] in intentional, malicious, tortious,

---

[5] On appeal, Balskus asserts that "[t]he first element that must be examined" for purposes of issue preclusion "is that the first litigation and the subsequent litigation were between the same parties or their privies." In making this argument, however, Balskus confuses the doctrines of issue preclusion and claim preclusion. Under the doctrine of claim preclusion, "a final judgment is conclusive in all subsequent actions *between the same parties [or their privies]* as to all matters which were litigated or which might have been litigated in the former proceedings." ***Northern States Power Co. v. Bugher***, 189 Wis. 2d 541, 550, 525 N.W.2d 723 (1995) (alteration in original; emphasis added; citation omitted). However, "[u]nlike claim preclusion, an identity of parties is not required in issue preclusion." ***Id.*** at 550-51.

and criminal behavior against" Balskus; (4) Attorney Babcock "simulated legal process to gain an advantage against" Balskus; (5) this conduct "frustrated the administration of justice" and was "an abuse of the legal process"; and (6) this conduct was "outrageous," and, as a result, the court should "dismiss the Contempt action and impose sanctions including costs."

¶20 Similarly, Balskus's complaint in the instant case contained the following, nearly identical allegations: (1) when the subpoena was issued, Attorney Babcock had not yet filed a motion to hold Balskus in contempt or scheduled any depositions; (2) Attorney Babcock "intentionally violated [WIS. STAT. §] 805.07(2)(b) by not notifying [Balskus] of the subpoena"; (3) Attorney Babcock "intentionally requested information that violated [Balskus's] privacy interests" and "intentionally failed to send a copy of the" subpoena to Balskus; (4) Attorney Babcock's conduct "simulated legal process by directing the State to produce confidential records in order to get an advantage over" Balskus; (5) Attorney Babcock's conduct was an abuse of process; and (6) Attorney Babcock's "extreme and outrageous" conduct warranted an award of compensatory and punitive damages.

¶21 Thus, this case involves the same issues that Balskus already raised in the family law case. Moreover, these issues were actually litigated and determined in the family law case, and their determination was essential to the court's ruling in that case. *See **Estate of Rille***, 300 Wis. 2d 1, ¶37. Balskus raised his current arguments in the family law case in response to Mary Ellen's motion for contempt, arguing that, based on Attorney Babcock's conduct, that motion should be dismissed and the court should award him sanctions, including costs. The court commissioner denied those requests. In so doing, the court commissioner rejected Balskus's argument that there were no motions pending

before the court at the time the subpoena was issued; characterized Attorney Babcock's failure to send a copy of the subpoena to Balskus as an "unintentional oversight"; and found that the information requested by the subpoena "would likely have been deemed discoverable and any objection by [Balskus] to its release would likely have been denied."

¶22 Balskus could have sought de novo review of the court commissioner's decision, but he declined to do so. Nevertheless, when addressing Mary Ellen's motion for de novo review, the circuit court again addressed Balskus's arguments regarding the subpoena and the denial of his motion for sanctions. Like the court commissioner, the court characterized Attorney Babcock's failure to send a copy of the subpoena to Balskus as a mere mistake or oversight. The court also concluded that the information sought by the subpoena was "likely discoverable" and that the subpoena likely would have been granted "even had [Balskus] had notice of it and sought a protective order." In addition, the court rejected Balskus's argument that issuance of the subpoena was improper because there was no "action" pending before the court. The court's order expressly stated that it was a final order for purposes of appeal, but Balskus chose not to appeal it. Under these circumstances, we conclude that the first step of the issue preclusion analysis is satisfied.

¶23 In arguing to the contrary, Balskus asserts that the circuit court in the instant case erred by failing to accept as true the allegations in his complaint that Attorney Babcock intentionally filed a subpoena with the State of Wisconsin that he knew would violate Balskus's privacy; that Attorney Babcock intentionally failed to notify Balskus of the subpoena to prevent Balskus from objecting; that Attorney Babcock intentionally issued the subpoena when there was no hearing, deposition, or special proceeding pending; and that Attorney Babcock took these

11

actions to gain an advantage over Balskus. As noted above, however, the court treated the Wanezek Firm's motion to dismiss Balskus's claims as a motion for summary judgment. When ruling on a motion for summary judgment, a court is not required to accept the allegations in the complaint as true. Instead, the court must ask whether the parties' submissions "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2).

¶24 Here, the issue before the circuit court on summary judgment was whether Balskus's claims were barred by the doctrine of issue preclusion. In addressing that issue, the court was required to determine: (1) whether issue preclusion could, as a matter of law, be applied; and (2) whether the application of issue preclusion would be fundamentally fair. *See Estate of Rille*, 300 Wis. 2d 1, ¶36. The factual allegations from Balskus's complaint about Attorney Babcock's alleged conduct in the family law case were not material to the court's analysis of either step of the issue preclusion analysis.

¶25 Balskus also contends that the first step of the issue preclusion analysis has not been satisfied because he never sought monetary sanctions against Attorney Babcock in the family law case. Instead, he contends that he sought dismissal of Mary Ellen's contempt motion and monetary sanctions *against Mary Ellen*. We acknowledge that Balskus's motion in the family law case merely asked the court to impose "sanctions including costs," without specifying whether those sanctions should be imposed against Mary Ellen or Attorney Babcock. Notably, however, the motion focused on actions taken by Attorney Babcock, not Mary Ellen. Furthermore, the court commissioner understood Balskus's motion to be seeking sanctions against Attorney Babcock and denied the motion with that understanding. We therefore reject Balskus's argument that issue preclusion

cannot apply because his motion in the family law case sought sanctions only against Mary Ellen.

¶26 Balskus also asserts that his present arguments regarding the subpoena were not "actually litigated" in the family law case because he was not "allowed" to conduct discovery on this issue and "no sworn testimony was taken." There is nothing in the record, however, to indicate that Balskus ever sought to conduct discovery or present sworn testimony regarding the subpoena in the family law case and was denied the opportunity to do so. We agree with the Wanezek Firm that Balskus's apparent failure to request discovery in the family law case "does not equate to his allegation that 'discovery was [not] allowed.'"

¶27 Having concluded that the first step of the issue preclusion analysis is satisfied, we now proceed to the second step of the analysis, which asks whether the application of issue preclusion would be fundamentally fair. *See id.* Case law has identified five nonexclusive factors that a court may consider in determining whether the application of issue preclusion comports with fundamental fairness:

> 1) Could the party against whom preclusion is sought have obtained review of the judgment as a matter of law;
>
> 2) Is the question one of law that involves two distinct claims or intervening contextual shifts in the law;
>
> 3) Do significant differences in the quality or extensiveness of proceedings between the two courts warrant relitigation of the issue;
>
> 4) Have the burdens of persuasion shifted such that the party seeking preclusion had a lower burden of persuasion in the first trial than in the second; and
>
> 5) Are matters of public policy and individual circumstances involved that would render the application of collateral estoppel to be fundamentally unfair, including inadequate opportunity or incentive to obtain a full and fair adjudication in the initial action?

*Id.*, ¶¶61, 63. "Factors 1, 2, and 4 of the analysis present questions of law," while "[f]actors 3 and 5 generally fall within the circuit court's exercise of discretion." *Id.*, ¶62. The weight to be given to each factor is discretionary, as is the circuit court's "ultimate decision on fundamental fairness." *Id.*, ¶¶38, 62.

¶28 The circuit court concluded that all five of the fundamental fairness factors weighed in favor of applying issue preclusion in this case, and we agree with the court's analysis. First, Balskus could have sought de novo review of the court commissioner's decision, but he did not do so. *See id.*, ¶61. Nevertheless, the circuit court addressed and rejected Balskus's arguments regarding the subpoena in its decision on Mary Ellen's motion for de novo review. Balskus could have appealed the circuit court's decision on de novo review, which was designated as a final order for purposes of appeal, but again he chose not to do so.

¶29 Second, the claims at issue in this case and in the family law case contain substantially identical allegations and both seek monetary damages for an alleged abuse of process and intentional tortious conduct by Attorney Babcock. Moreover, Balskus does not argue that there has been any "intervening contextual shift[] in the law" since the circuit court's decision in the family law case. *See id.*

¶30 Third, we perceive no significant differences in the quality or extensiveness of proceedings between the family law case and the instant case that would warrant relitigation of the issues in question. *See id.* Balskus again argues that he was not permitted to conduct discovery and that he had "no right or ability for a jury trial" in the family law case. As we have already stated, however, Balskus's apparent failure to seek discovery in the family law case does not mean that he was not permitted to do so. Additionally, as the Wanezek Firm aptly notes, Balskus "voluntarily elected to present his case to a forum without a jury trial."

14

¶31 Fourth, with respect to the burden of persuasion, *see id.*, our case law has clarified that "it is inappropriate to apply issue preclusion against the party now assigned a lesser burden" if "the burden of proof was greater in the first action than in the second," *Pierce v. Colwell*, 209 Wis. 2d 355, 360, 563 N.W.2d 166 (Ct. App. 1997). Balskus does not develop any argument that his burden of persuasion regarding his motion for sanctions in the family law case was greater than his burden of persuasion regarding his claims in the instant case.

¶32 Fifth, we are not convinced that "matters of public policy and individual circumstances" would render the application of issue preclusion in this case fundamentally unfair. *See Estate of Rille*, 300 Wis. 2d 1, ¶61. Balskus suggests that issue preclusion should not apply here based on a public policy of "protect[ing] innocent parties from misconduct of attorneys." In support of this argument, he asserts that Attorney Babcock "appears to have violated statutes; violate[d] rules of professional responsibility; commit[ted] tortious act[s]; and possibly violate[d] criminal law." As discussed above, however, both the court commissioner and the circuit court in the family law case rejected these arguments and concluded that Attorney Babcock's failure to provide Balskus with a copy of the subpoena was merely an unintentional oversight. Under these circumstances, we see no significant public policy concerns that would weigh against applying issue preclusion to Balskus's claims in the instant case.

¶33 Ultimately, we agree with the Wanezek Firm's assessment that

> [a]t the heart of this matter is that Mr. Balskus was annoyed that he was not copied on the subpoena. But the [court commissioner] already determined that any objection that would have been asserted in response to the subpoena would have been overruled. [The circuit court] explicitly found that the employment records met "the minimal standard of relevancy" under WIS. STAT. § 804.01(2)(a).... While Mr. Balskus may be unhappy that

his employment records were requested and analyzed, the documents were relevant and discoverable.

Accordingly, and for all of the reasons set forth above, we affirm the circuit court's order dismissing Balskus's claims against the Wanezek Firm based on the doctrine of issue preclusion.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.